Thank you, Your Honor. May it please the Court, Lachlan Shelfer of Gibson Dunn, for Petitioner Mr. Garcia, and I will endeavor to save five minutes of my time for rebuttal. Your Honors, as the government concedes, for more than 70 years, the government's rule has been that a theft offense qualifies as a crime involving moral turpitude only if the defendant intends a literally permanent deprivation. The single board member below in the opinion under review misapplied this standard, as demonstrated by the BIA's published opinion a few months later in Diaz-Lizarraga. The government does not even try to defend the opinion under review, and that is enough to decide this case. Instead, the government tries to apply a new rule retroactively to Mr. Garcia. As I mentioned, in 2016, the BIA adopted a new rule in Diaz-Lizarraga. It first acknowledged that the BIA had long required a literally permanent intent to deprive, and it stated that it was overruling its prior precedent and instead was dropping the permanency requirement. Now the government is trying to apply this new rule retroactively to Mr. Garcia, who is a lawful permanent resident, but as the Second and the Tenth Circuits have already held, Diaz-Lizarraga cannot apply retroactively. Now, this Court looks to the 5 Montgomery Ward. The case is that the BIA had been requiring for a long time permanent taking of property, and that's the rule that your argument is it should have been applied. That's right. At the time that Mr. Martinez? Garcia. Garcia, sorry, was adjudicated. That's right. That's right, Your Honor. And one way we know this clearly is just to look at the BIA's own words just a few months after Mr. Garcia's, the unpublished single board member opinion that's actually under review here. Just a few months later, in a published opinion by the — interestingly, by the same board member who had decided Mr. Garcia's case, a published opinion, Diaz-Lizarraga, the board goes through the long history and says we have always applied a literally permanent intent standard, but the states, most states have changed the way that they define theft. The BIA and Diaz-Lizarraga actually mentions Oregon as one of these states that has changed its definition of theft in response to the model penal code. And the BIA says that the only way that it will be able to reach these states like Oregon under the crime-involving moral turpitude standard is to change the standard to make it more capacious because those states had broadened their definition of theft from the traditional strict larceny definition. Now, this — It all boils down to retroactivity or nonretroactivity? I think so. I think most of the action is in retroactivity. We have five — obviously, this Court has five factors, the Montgomery Ward test. I — last week, I submitted a 20HA letter for the Second Circuit's case, Obeya v. Sessions. Second Circuit applies the exact same five-factor test as this Court. The Second Circuit found that all five factors support Mr. Obeya, who is almost identically situated to Mr. Garcia here. And — but I agree that most of this comes down to retroactivity. Even under the government's understanding of the five factors, the government There's nothing wrong — nothing wrong with the current standard as it has been modified, but you can't apply it to your client. Well, we think you absolutely cannot apply it retroactively. We do have an argument that it also cannot be applied prospectively, which I would be happy to elaborate on. But I think this case could be decided very easily on the retroactivity point. Just to briefly mention the prospective, there is an attorney general opinion called Matter of T from the 40s, and it is our contention that that is the case that adopted the permanency requirement. And the attorney general has cited it for that proposition. Courts, state and federal courts, the BIA has cited it for that proposition. And the — I should note, first of all, the government never bothers even to respond to that argument. Yeah, I think that there's not any response to that. We might hear one today. Yeah, I think so. Just to quickly walk through the factors, even under the government's reading, they acknowledge that the fourth — under the fourth factor, Mr. Garcia would — that the removal would impose a substantial burden on him. And even under the government's reading, under the fifth factor, which is the statutory standard, it only at most leans in the government's favor. So as we've discussed, this is really about retroactivity, the second and the third factors. So we, in our briefs, have looked at 70 years. This Court really doesn't need to look much further than the BIA's own words in Diaz-Lizarraga in which it acknowledged that there was a sea change that it was taking on. And so what's on the government's side of the ledger in the retroactivity portion? We would argue nothing. This is on page 41 of the government's brief. They cite a few cases that have nothing to do with crimes involving moral turpitude. These are Matter of VZS, Duenas-Alvarez, and Lucky V. Holder. Those are all aggravated felony cases. And in fact, Matter of VZS acknowledges that the theft definition for aggravated felony is much more lenient and capacious than the strict definition for crime involving moral turpitude. So that case actually, we would argue, helps us. The government then points to a case, Matter of Graslie. Again, we think this helps us because it applies the permanency requirement and allowed, and the only way it was able to reach that case and to classify it as a theft was to employ the modified categorical approach and look at the facts underneath. So the government ends up leaning fairly heavily on a 2006 opinion, Matter of Horado. First, I would urge this Court again to look at the Second Circuit case, Obeah v. Sessions, where they go through this case and find that it does not help the government at all. And then in fact, it helps Petitioner. I think it helps Mr. Garcia here because it did not get rid of the permanency requirement. And instead, first of all, it dealt with a completely separate statute called retail theft, shoplifting statute, essentially, and nothing at all to do with the generic theft statute that Mr. Garcia was pleaded to. And second, as even Diaz-Lizarraga recognized, Matter of Horado said it was appropriate to look at the nature and circumstances surrounding the offense in order to determine that there was — it was, in fact, a permanent intent. So in other words, it was — Matter of Horado did not comply with the categorical approach, and it established this inference based on this unique shoplifting statute. Sotomayor, if permanent deprivation is the correct standard under which Mr. Garcia should have been adjudicated, what happens then? Do you request that the case be remanded to the BIA for further adjudication? That's certainly one remedy. We don't think it's a close case. We think that under the BIA's own words in Diaz-Lizarraga, Oregon obviously does not qualify because it mentioned Oregon as one of those statutes that it was trying to reach. I would also urge the Court to look at, again, the OBEA opinion. At the end of that opinion, it says — Right. They said it didn't — virtually permanent is not the same as permanent. Exactly. They said, well, let's look at the old rule. That was the New York Pettit larceny. In Diaz-Lizarraga, in the footnote that lists Oregon, it also lists New York's larceny statute as essentially the same thing. So, again, we think that under the old rule, the theft convictions would not qualify as a crime involving — That's for the immigration court to resolve, isn't it? Well, I don't know. The immigration court was applying what it thought was the standard. We think it was the wrong standard. Yeah, it could be that this court could say, Diaz-Lizarraga does not apply retroactively. You have to apply your old standard. You applied it incorrectly here. Right. We are remanding for you to apply it correctly. Although, frankly, I don't think — there seems to me to be only one possible answer to that. So if this court would like to just take that in hand and decide the matter, that would also be a way to resolve it. I would like to reserve the remainder of my time. You may. Thank you. Good morning, Your Honors, and may it please the Court. Imran Zaidi for the Attorney General. I'd like to clarify at the outset what's not at issue in this appeal. Petitioner does not dispute the validity of matter of Diaz, nor that under matter of Diaz, his Oregon theft offenses are categorically crimes involving moral turpitude. What is at issue in this appeal, and really what's the central question in this appeal, is whether matter of Diaz applies retroactively to Petitioner's theft offenses and thus renders him removable. Now, that's the issue I'd like to focus on primarily today, subject, of course, to this panel's questions, and then I may have just a few brief points on Petitioner's vagueness challenge at the end. Now, on the issue of retroactivity, this Court applies Montgomery Ward's five-factor test. Did you say that all of his offenses are crimes involving moral turpitude? And is that true under whatever standard we apply? Your Honor, the government's position on appeal is that matter of Diaz applies retroactively. So we're arguing that under matter of Diaz, his theft offenses categorically constitute crimes involving moral turpitude. And to be clear, they've never disputed that point. And if we were to decide the retroactivity issue opposite of what I think you're about to argue, what then would be the result? Your Honor, I think that would resolve the case. You know, the government, again, advances only a retroactivity argument here, but we did that because we think, practically speaking, the two arguments, whether we decide to defend the unpublished decision or matter of Diaz in fact, practically speaking, converge on the issue of whether or not the new rule is a change, is a fundamental change in circumstances. Your position is, of course, that the Ninth Circuit should break ranks with two circuits that have already directly addressed this, correct? Yes. One circuit, Your Honor. The Tenth Circuit didn't actually address retroactivity because the Tenth Circuit the government never invoked it there. And the Tenth Circuit actually, as opposed to the Ninth Circuit, applies a presumption of prospective application, which this Court does not. So that was never briefed. Retroactivity was never briefed in that issue. The government never invoked it. You say that only the Second Circuit has directly. And the Second Circuit has directly. And I'm happy and very much want to address OBEA. I think that discussion will be a little bit more clear if I can address the Montgomery Ward factors first. So I think all parties and opposing counsel agrees that the critical two factors in the Montgomery Ward test are the closely intertwined second and third factors, which are whether the new rule is an abrupt departure in the law and the extent of Petitioner's reliance interests based on the old law. Now, examining these factors, this Court has said a new rule should apply retroactively so long as it could have been reasonably anticipated, such that it was not a complete surprise. And very importantly, this Court clarified in Garfias-Rodriguez, its en banc decision, that ambiguity in the law and confusion in the law all militate in favor of applying a new rule retroactively because it means there was not a reasonable reliance based on the old standard. What about a change in the law that seemed to capture a lot more people and bring a lot more people subject to a crime involving moral turpitude? Well, I think the answer to that question will— I mean, the first thing there was permanent theft that, you know, permanently removed— Sure. —permanently deprived the owner of the property. Right. The change in the law seemed to expand the number of people that could be brought in under the crime involving moral turpitude. That's correct under Petitioner's interpretation of that question. It's a big change. It is, Your Honor, and I want to be very, very clear about this. And let's just get right to it and apply the central retroactivity factors here. There's three reasons that we think a matter of Diaz was not only not a complete surprise, but to the contrary, it simply solidified a trend in the law that was already taking place. Does it matter if I remember from the record that the judge who made the change himself declared that he made a mistake? I'm sorry. In which decision are you talking about? I think he made a comment in a subsequent decision. I could be mistaken, but I thought that the judge himself had suggested that it might have been mistaken. I am most certainly not aware of any such opinion. The three reasons that we think a matter of Diaz was very clearly not a complete surprise are, first, the matter of Diaz itself said so. Now, I have to be extremely clear about this point because Petitioner continues to rely on this literal permanent deprivation language. What a matter of Diaz said is it recognized that the longstanding definition of theft had required an intent to permanently deprive. In that very same paragraph, however, matter of Diaz clarified that the board over time had interpreted that standard to include less than permanent deprivations. And I'll take the opinion right now, and I'm quoting here. At the same time, we have found it appropriate to presume, absent evidence to the contrary, that retail theft and theft of cash involve an intent to permanently deprive the owner of the merchandise or cash without the necessity of affirmative proof. Now, it's citing matter of Gerardo Delgado, a board decision from 2006, and matter of Grassley, a board decision from 1973. The board goes on to describe these cases as finessing the distinction between permanent and temporary, and in fact says that that new sort of the blurred lines are one of the reasons that it was important to clarify the law in matter of Diaz. So that's one very important point. These two decisions have now been relied upon for years, and in the case of matter of Grassley, decades by the board. In unpublished decisions, and then the published ones would be these two, matter of Gerardo Delgado and Grassley, the board has relied on these cases to say that a less than literally permanent deprivation is categorically a crime involving moral turpitude. Now, that's not all. This Court's jurisprudence in — Wouldn't you say that one is more serious than the other? I mean, permanent deprivation, would you think, is a lot more serious than temporary deprivation? Oh, there's no question, Your Honor. There's no question. And I think — For purposes of crime involving moral turpitude, you say it makes no difference. Well, I think — and this is an important point. It's a good question. I think what the board was trying to do in matter of Diaz was not just open the door all of a sudden and say, look, not just permanent, but let's open it up to all temporary deprivations. I confess that it seems that way to me. It's not at all that, Your Honor. And I want to be very clear about this. What they're doing is defining permanent to include what they consider to be virtually permanent. And this is to track the change in the model penal code itself. It doesn't say that. And it seems to make it subject to whichever judge is looking at the case. Well, no, Your Honor. It's not a very clear standard. The standard for matter of Diaz or the prior standard? No, the standard had opened things up to non-permanent deprivations. No, I think — well, so I think matter of Diaz made very clear that it's permanent or something that substantially erodes the property rights of the owner. And that's exactly what the board had started to capture in decisions like matter of Gerardo Delgado. What would that — what would that mean to you, substantially erodes the owner's interest in property? Well, I think some of the examples that matter of Diaz gives are perfectly on point. And this is — I think the best way to think about this is stealing something from a store and then trying to get a refund when you return it. Or taking something from somebody and trying — and giving it back only upon getting a reward from them. Or perhaps even just damaging a product. I mean, that's what it is — what's at issue here. That's what matter of Diaz meant to address is that the original dichotomy of taking was just meant to distinguish between sort of substantial reprehensible takings and de minimis ones. And then it became clear over time that that sort of permanent temporary dichotomy wasn't capturing the reality that there are even temporary takings that are just as culpable as permanent ones. And they would include the examples I just gave you. You could take something temporarily, but you could either damage it or you could give it back to somebody only upon receiving value for it. And those things have permanent culpable effect even if they're not — if they're not literally permanent takings. And that's exactly what the Board said in matter of Gerardo Delgado and matter of Grassley. But, Your Honors, I think maybe most of the — Sotomayor, in any case, I think the question for us is which standard applies at the time that the immigration court decided the case? Well, for our purposes and the way the government and even Petitioner has briefed it, it's — the question is whether matter of Diaz should apply retroactively. And in answering that question, and I think really what this whole case centers on, is whether matter of Diaz was a fundamental and abrupt departure in the law or just a continuation in the trend. I guess what I'm having some collisions with is you're trying to convince us that it's just part of a continuum. And then I'm reading the judge's language, and there's — Well, Your Honor, I think that's — I'm just saying, you know, viewing this from the modern perspective, our early jurisprudence does not. And then he has other language in here about distinguishing between substantial and going — you know, going back all these years. I'm just having trouble reading Diaz and then hearing your position. No, I — you know, it's interesting because I think this case is one of — matter of Diaz is one that very easily could be read in both directions. And so I want to take the sentence that you just started, that we conclude that our early jurisprudence — because that's actually, I think, the line that Petitioner must be citing when they say literally permanent. So we conclude that our early jurisprudence does not provide us with good reasons to persist in the rule that moral turpitude requires a taking involving a literally permanent intended deprivation. Now, this is after the Court has already — the Board, sorry, has identified that the Board has started to apply permanent in a less-than-literal way. And so the — what matter of Diaz was trying to do is clarify that to the extent that it had ever required a literal permanent deprivation, those cases were overruled. And you don't need to take my words for that. You can read the last line of the decision. Therefore, to the extent that any of our prior decisions have required a literal intent to permanently deprive in order for a theft offense to be a crime involving moral turpitude, those decisions are overruled, only to the extent that the Board had required a literal intent to permanently deprive. Now, this Court's own jurisprudence — It depends on where you land with which Board member is what they're saying in the past. But otherwise, all that's out the door, and now we have a clean rule. Well, no, and it is definitely clean. And there's no question Diaz — But there was no clean rule before. It was not — it was not very clean. But I think even — I mean, we have that same language in our cases when we say to the extent that there's a problem because we realize there's no clean rule. Therefore, you'll see that in a lot of circuit opinions. Now we make a clean rule. Right. Well, but, Your Honor, and to be clear, I'm not saying that this has become a very — that it's become very clear what permanent or almost permanent is. What we are saying is that that is at least what the standard has become, this sort of unclear permanent but not literally permanent standard. And the whole point of matter of Diaz was to clarify what this new standard is. This Court has already recognized this, by the way. The second reason that we think — we think it's a very clear matter of Diaz is not a complete surprise. This Court in its Castillo-Cruz theft jurisprudence has itself confirmed this. This is kind of a one-off case, then, isn't it? Castillo-Cruz? No, this one. Which one, Your Honor, the matter of Diaz or the unpublished decision here? No, this case here. I mean, you've got a new rule now, so, you know, the standard is what it is. Sure. The question is whether it applies to Mr. Diaz. Exactly. That's exactly right, Your Honor. That's why I said this is a one-off case and a one-off rule. I mean, after this, there's a new standard that is being applied by the BIA. It is, Your Honor. I mean, I suppose there are going to be other cases where — What the Supreme Court may do. Sure. And I think — I think there may be other cases in which somebody tries — in which the government would invoke matter of Diaz retroactively, depending on how the Court rules here. Certainly, there's convictions that predate it, and so it just depends on the timing. I can't emphasize enough that this Court in Castillo-Cruz in 2009 already said that California theft under Section 484 is categorically a crime involving moral turpitude, notwithstanding the fact that the California Supreme Court has clearly defined that crime to include less than permanent takings. Now, this Court didn't explicitly address that construction of the statute that addresses less than permanent takings, but there have been repeated challenges to that holding claiming that it must be overbroad, Section 484, because it includes less than permanent takings, and this Court has consistently rejected those challenges and specifically continued to cite Castillo-Cruz, including just recently in Heredia Ventura v. Sessions, one of the cases we cited in our statement of related cases. So this Court itself has recognized that. And then the final point is that other courts have similarly recognized it. We cited Chacon v. Sessions in our brief. In that case, the Fifth Circuit recognized that, I think, in an Oklahoma municipal ordinance. And I know there's some other cases there, and I don't want to cut those off. But we see them in the brief. Would you just comment briefly on the matter of T, which I don't think was in the responsive brief that was raised? Yes, Your Honor. It was not in our brief. I think we think Matter of Diaz addressed this. I mean, my question is with respect to the argument that Matter of T binds the BIA. No, I understand your argument, and I think, you know — It's not an argument. It's a statement they made. Sure. I understand what you were adverting to, Your Honor. And I think when I say Matter of Diaz, I'm saying we didn't respond because we think Matter of Diaz actually explicitly addresses this point when they cite Matter of T. Matter of Diaz recognized that there was an attorney general decision hanging out there, and it said, in Matter of T, the Board simply stated in a — accepting a dissent in overruling a prior Board decision that a Canadian statute did not categorically constitute a crime involving moral turpitude. It never references — never references a permanent versus temporary distinction. And the Board in Matter of Diaz described that case as just simply saying there are substantial versus de minimis takings. Nobody has ever seriously suggested that the Board could not revisit its theft definition without an express attorney general decision. And, indeed, the attorney general — or the Board has continued to refine that definition in Matter of Harada Delgado and Matter of Grassley. So there's really no serious consideration here that it requires an attorney general decision. Thank you. Thank you, Your Honor. Mr. Fuentes has one more. Yes. Is it the case that regarding Mr. — is it Mr. Diaz? No. Mr. Garcia. Mr. Garcia. I'm sorry. Mr. Garcia. Martinez. That none of his theft offenses amounted to permanent takings. Is it the case that none of them amount to permanent takings? Yes. In what sense, Your Honor? Well, I believe there — I believe it's retail theft. So under — I mean, under Matter of Harada Delgado. But there was never a determination that what you did, Mr. Garcia, amounted to a permanent taking of property. So his offenses were less than permanent takings. Would that be accurate? If you are talking about literally permanent, then I think that's probably correct. Under the Oregon statutes that he was convicted of. Right. Well, the Oregon statute, again, the Oregon statute defines it pursuant to the model penal code. So they say permanent defines it to be permanent or in a way that erodes a major benefit of the property itself. And, again, other courts have already started to interpret that exact same language, even pre-Diaz, to include — The immigration judge never made a determination that your — I thought it had been decided in the immigration court that the offenses for which he had been convicted were less than permanent. No, I'm — you mean in the immigration judge's analysis? In the immigration judge's CIMT analysis? I think the immigration judge, like the Board, said that it required less than a permanent taking, but even that would constitute a categorical crime involved in moral interpretation. Yes. And I see that my time is up, Your Honor. Thank you. We ask that the Court deny this petition for review. Thank you. Thank you, Your Honor. Just a few quick things. It appears that the government continues not to argue that — not to contest that Mr. Garcia wins under the old rule, and they are arguing only for retroactivity. So if this Court finds that it does not apply retroactively, then it would grant the petition for review, we would ask. The government tries to make a reference to retail theft. I'm not sure what exactly it's talking about, since this is a categorical approach and this is a generic theft statute. So to the extent — That's what I was trying to get at with Mr. Zaidi. Does he really win under the old rule if the case were to go back? Mr. Garcia wins under the old rule. That's right. Yes. As the Second Circuit held and as the government continues not to contest, I think went out of its way not to — not to contest that. Your Honor, Judge Fuentes, you raised the idea of a judge possibly being mistaken or acknowledging that he's mistaken. What you may be referring to is the fact that it's the same board member who decided Mr. Garcia's case, who also three months later wrote Diaz-Lizarraga. In Mr. Garcia's case, he said, well, we don't apply permanently. We don't mean that literally. And then three months later, he said, well, we've always applied it literally. And so we — so that's — that, I think, is — and the government, again, leans on Matter of Harado. Things can happen with the passage of time. Yeah, but not much time, either. Matter of Harado, who's actually written by the same board member, I think we've gone over, and Matter of Graslie, why they actually support Petitioner. And just very quickly, the government said — I think mentioned that we do not contest prospective application, but, again, Matter of T. Matter of T, the dissent at the BIA level had said this Canadian theft statute is not larceny as we, in our country, understand larceny. We would not call it by that name in our country because it does not require literally permanent taking. And then in a very terse opinion, the attorney general says, I'm reversing the majority BIA because we would not call this theft in our country. This does not go by the name of theft. And I'm clearly referring to the dissent's analysis there. If there are no further questions, we would ask this Court to grant the petition  Thank you. Thank you, Your Honors. The case of Garcia v. Sessions is submitted. Also, the Court would like to thank you, Mr. Shelfer, and your firm, Gibson Dunn, for participating in our pro bono program. It's very helpful to the Court, and I think — I thank Mr. Zaidi for his argument. I think it's also helpful to the government in these type of cases where we have squarely presented legal issues. So it's very helpful to have good briefing on both sides. So I thank you both for your argument, and we're now adjourned for the morning.
judges: Fuentes, Fernandez, McKeown